**THIRD DIVISION
DILLARD, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be
received no later than 4:30pm on the 10th day after the
decision was issued to be deemed timely filed.
https://www.gaappeals.gov/rules**

**August 5, 2026**

# In the Court of Appeals of Georgia

A26A0862. IN THE INTEREST OF T. C., a child.

DILLARD, Presiding Judge.

After an incident in which then 15-year-old T. C. shot Michael Morgan, the State filed a delinquency petition in the Juvenile Court of Newton County. More precisely, the State alleged T. C. committed acts that—if committed by an adult—would constitute aggravated assault with intent to rob, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. The State then moved to transfer T. C.'s case to the superior court for prosecution; and after a hearing, the juvenile court granted the motion. On appeal, T. C. contends the court erred by failing to consider his interest in being treated in the juvenile system

and only focusing on whether the protection of the community required transfer. For the following reasons, we affirm.

The record shows that in 2025, then 15-year-old T. C. already had a three-year history with the Newton County Department of Juvenile Justice for various instances of delinquent conduct. And while he had been ordered to receive counseling, take medication for mental-health issues, and complete community service, T. C. rarely complied with these directives and never fully completed them. In fact, rather than comply, T. C. often ran away from his mother's home and the home of other relatives with whom he had been placed.

Around this same time, Michael Morgan resided at 525 Lakeside Circle in Covington. Morgan often saw T. C. in the Gross Lake neighborhood, and noticed that T. C. frequently wore the same clothes. And after T. C. told Morgan that he was homeless, Morgan occasionally gave him clothes, food, and small amounts of money.

On the night of March 4, 2025, the Ring-doorbell video camera on Morgan's front door showed T. C. and another juvenile (later identified as N. S.) approach the residence and then separate—with T. C. moving to the right and standing behind a bush. A few minutes later, Morgan exited his front door, holding a book bag and

2

speaking on his cell phone. And as Morgan walked toward his vehicle, T. C. emerged from behind the bush, drew a handgun and fired two shots at Morgan, striking him at least once. N. S. also fired two shots; and as Morgan fell to the ground, both juveniles fled from the scene.

Law enforcement and emergency medical personnel arrived within a few minutes; and although he did not know their real names, Morgan stated that he recognized the two shooters. At the hospital, Morgan was treated for three gunshot wounds (including two to his back). And after being stabilized, Morgan identified T. C. and N. S. from a photographic lineup as the two individuals who shot him.

Law enforcement issued a "be-on-the-lookout" for the two juveniles; and the very next day, T. C.'s mother contacted the police to tell them that she had seen her son leaving her home on the day of the shooting with a handgun. She added that when T. C. returned home that evening, he threw away the clothes he had been wearing. T. C.'s mother then consented to a search of her home, during which law enforcement recovered the clothes and determined they matched those worn by the shooter identified as T. C. in the Ring-doorbell video.

Following the shooting, law enforcement could not locate T. C. But they did apprehend N. S., who provided a statement admitting that he and T. C. shot Morgan. N. S. added that he initially thought they were going to Morgan's home to buy marijuana; but after the shooting, he realized T. C. intended to rob Morgan because T. C. later asked him why he had not grabbed Morgan's book bag when they fled.

Although law enforcement received a tip that T. C. left the county and others regarding his current whereabouts, they could not locate him. But nearly two months later (on May 5, 2025), law enforcement learned that T. C.'s mother would be driving her son back to Covington. Then, based on this information, officers conducted a traffic stop of his mother's vehicle; but T. C. jumped out while it was still moving and fled on foot. Even so, after setting up a perimeter in the area, T. C. was apprehended. And once he was in custody, T. C. stated that he knew why law enforcement wanted to speak with him—because they thought he shot someone.

Later, the State filed a petition of delinquency in the juvenile court, charging T. C. with acts that—if committed by an adult—would constitute aggravated assault with intent to rob, aggravated assault with a deadly weapon, possession of a firearm during the commission of a felony, and possession of a handgun by a person under 18 years

of age. On the same day, the State moved to transfer the case to the superior court for prosecution, arguing that the seriousness of the crimes, among other things, warranted trying T. C. as an adult.

On June 23, 2025, the juvenile court held a hearing to determine whether there was probable cause to believe that T. C. committed the offenses alleged in the State's petition. And during that hearing, an investigator with the Newton County Sheriff's Office testified about her investigation of the shooting—including interviewing Morgan (T. C.'s mother) and N. S., as well as reviewing Morgan's Ring-doorbell video. The court then heard argument from both parties; and at the conclusion of the hearing, it found probable cause to believe T. C. shot Morgan.[1]

Around one month later, on July 28, 2025, the juvenile court conducted a hearing on the State's motion to transfer the case to superior court. At the start of the hearing, the parties stipulated that T. C.'s behavioral-health evaluation did *not* oppose transfer on the ground that he should be institutionalized due to mental illness or

---

[1] See *In the Interest of K. S.*, 348 Ga. App. 440, 441(1) (823 SE2d 536) (2019) (explaining "[p]robable cause exists if the totality of the facts and circumstances would warrant a reasonable person to believe that the juvenile committed the alleged offense"). See also OCGA § 15-11-561(a)(1) (providing that a determination of probable cause to believe the juvenile committed the offense is the first requirement in determining whether transferring the case to the superior court is appropriate).

disability.[2] The State then called as its only witness the Department of Juvenile Justice probation officer who supervised T. C. during the three years he was in the juvenile justice system for prior offenses. The probation officer testified that T. C. had previously been ordered to attend counseling for behavioral issues and to take medication for mental-health issues but had not fully complied in either respect. In addition, the probation officer testified that T. C. had been ordered to perform community service but had not complied in this regard either and often ran away from his mother's home or the other homes in which he was placed. At the conclusion of the hearing, the court granted the State's motion to transfer, affirming that ruling in a written order the next day. This appeal follows.

In his sole enumeration of error, T. C. contends the juvenile court erred by failing to properly consider his interest in being treated within the juvenile justice system and only focusing on whether the protection of the community required transfer. We disagree.

Under the Georgia Juvenile Code, OCGA §§ 15-11-561 and 15-11-562 address the transfer of a juvenile's case to superior court for criminal prosecution (as opposed

---

[2] See OCGA § 15-11-561(a)(2) (requiring a determination of whether the child is committable to an institution as a prerequisite for transfer to the superior court).

to a delinquency proceeding). OCGA § 15-11-561(a) provides, in relevant part, that before transferring jurisdiction from juvenile to superior court, the juvenile court must determine that

> (1) [t]here is probable cause to believe that a child committed the alleged offense; (2) [s]uch child is not committable to an institution for the developmentally disabled or mentally ill; and (3) [t]he petition alleges that such child (A) [w]as at least 15 years of age at the time of the commission of the offense and committed an act which would be a felony if committed by an adult … .

Upon making those determinations, and "[a]fter consideration of a probation report, risk assessment, and any other evidence the court deems relevant, including any evidence offered by [the] child," the juvenile court "may determine that because of the seriousness of the offense or such child's prior record, the welfare of the community requires that criminal proceedings against such child be instituted" and may transfer the case to superior court.[3] And in considering whether transfer is

---

[3] OCGA § 15-11-561(c).

appropriate, the court "also must consider the non-exhaustive list of eleven criteria set forth in OCGA § 15-11-562(a),"[4] which includes:

> (1) [t]he age of such child; (2) [t]he seriousness of the alleged offense, especially if personal injury resulted; (3) [w]hether the protection of the community requires transfer of jurisdiction; (4) [w]hether the alleged offense involved violence or was committed in an aggressive or premeditated manner; (5) [t]he impact of the alleged offense on the alleged victim, including the permanence of any physical or emotional injury sustained, health care expenses incurred, and lost earnings suffered; (6) [t]he culpability of such child including such child's level of planning and participation in the alleged offense; (7) [w]hether the alleged offense is a part of a repetitive pattern of offenses which indicates that such child may be beyond rehabilitation in the juvenile justice system; (8) [t]he record and history of such child, including experience with the juvenile justice system, other courts, supervision, commitments to juvenile institutions, and other placements; (9) [t]he sophistication and maturity of such child as determined by consideration of his or her home and environmental situation, emotional condition, and pattern of living; (10) [t]he program and facilities available to the juvenile court in considering disposition; and (11) [w]hether or not a child can benefit

---

[4] *In the Interest of K. S.*, 348 Ga. App. at 441. See OCGA § 15-11-561(c) ("The court shall also consider the criteria listed in subsection (a) of Code Section 15-11-562.").

from the treatment or rehabilitative programs available to the juvenile court.[5]

Importantly, in reviewing a juvenile court's ruling on the State's motion to transfer, we are "limited to ascertaining whether there was some evidence to support the juvenile court's determination, and absent an abuse of discretion, we will affirm its ruling."[6]

Here, at the conclusion of the transfer hearing, the juvenile court noted its earlier finding of probable cause to believe T. C. committed the alleged offenses, the stipulation that the behavioral health evaluation found that he was not committable to an institution for the developmentally disabled or the mentally ill, that he was 15 years old at the time of the shooting, and that the alleged acts would be considered

---

[5] OCGA § 15-11-562(a)(1)–(11).

[6] *In the Interest of A. G.*, 363 Ga. App. 801, 804–05(1) (872 SE2d 780) (2022) (emphasis & punctuation omitted). Accord *In the Interest of C. M.*, 356 Ga. App. 368, 369 (847 SE2d 374) (2020) (punctuation omitted). See *In the Interest of T. S.*, 336 Ga. App. 352, 352–53 (785 SE2d 32) (2016) ("On appeal from an order transferring a case from juvenile court to superior court, the function of this Court is limited to ascertaining whether there was some evidence to support the juvenile court's determination that the requirements of ... OCGA § [15-11-561] have been met, and absent an abuse of discretion, we will affirm the order transferring jurisdiction." (punctuation omitted)).

felonies if committed by an adult. And right after, the court explicitly noted that it was "moving into the transfer criteria" under OCGA § 15-11-562, expressing concern at the violent nature of the charges, the injuries to the victim, and the fact that the shooting was obviously preplanned—with both T. C. and N. S. lying in wait for Morgan outside his home and then fleeing the scene after shooting him in the back.

Contrary to T. C.'s contention, the juvenile court acknowledged that T. C. suffered from mental-health issues and needed treatment, but it also noted that in the three years he had been involved in the juvenile justice system—for offenses such as obstruction, terroristic threats, and battery—he had not complied with any of his probation conditions or treatment recommendations and, instead, continued to run away from the homes in which he was placed. Based on this evidence, and the escalation in the seriousness of his offenses, the court concluded it was in the interest of the community to transfer T. C.'s case to superior court.

Given these circumstances, the record shows the juvenile court considered T. C.'s interest in receiving treatment within the juvenile system, but it expressed skepticism that he was amenable to it. And even assuming T. C. was, in fact, amenable to such treatment, the court's determination that the community's interest in

transferring his case to superior court outweighed T. C.'s interest in receiving treatment in the juvenile-justice system was undeniably supported by the evidence.[7] The court did not abuse its discretion, then, in granting the State's motion to transfer the case to the superior court.[8]

For these reasons, we affirm the juvenile court's judgment.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*

---

[7] See *In the Interest of C. M.*, 356 Ga. App. at 371–72(3)(b) (holding juvenile court did not abuse its discretion by transferring case to superior court given that juvenile had history in the juvenile justice system, had been through several rehabilitative programs, which were unsuccessful, and continued to accumulate further charges); *In the Interest of K. S.*, 348 Ga. App. 448–50(3) (concluding juvenile court properly considered all the transfer criteria and did not err in ruling interest of the community outweighed juvenile's interest in remaining in the juvenile court system); *In the Interest of T. S.*, 336 Ga. App. at 359–60(3), (4) (same).

[8] See *In the Interest of K. S.*, 348 Ga. App. at 450(3) ("Determinations of a juvenile court made on an exercise of discretion, if based upon evidence, will not be controlled by this Court." (punctuation omitted)).